**NOT FOR PUBLICATION**                                                                 **[6]**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| RONALD GRIECO, | : | Civil Action No. 06-1315 (FLW) |
| Plaintiff, | : | |
| v. | : | |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | : | **MEMORANDUM OPINION** |
| Defendant. | : | |

**WOLFSON, District Judge**

Plaintiff, Ronald Grieco ("Grieco"), appeals from the final decision of Commissioner of Social Security ("the Commissioner"), Michael J. Astrue[1], denying him disability benefits under the Social Security Act. The Court has jurisdiction to hear this matter pursuant to 42 U.S.C. § 405(g).

Plaintiff contends that the decision of the Commissioner was not supported by substantial evidence and should be reversed. Specifically, Plaintiff argues that Administrative Law Judge ("ALJ"), Daniel N. Shellhamer, improperly evaluated the medical evidence and erred by not fully considering the plaintiff's non-exertional impairments. For the reasons stated below, the decision

---

[1]The Court notes that Michael J. Astrue became the Commissioner of Social Security on February 2, 2007, thus he is substituted for the former Commissioner, Jo Anne B. Barnhart, as the Defendant in this suit.

of the Commissioner is affirmed.

**I. Background**

Plaintiff, Ronald Grieco, is a 60 year-old-man with a high school equivalency education. Administrative Record ("AR") 18.  Plaintiff has twenty years experience working as a salesperson for a trucking company.  Id. While working in that capacity, Plaintiff alleged that he would drive approximately 100 miles during each workday, AR 30, that his workdays lasted between 12 and 18 hours, AR 31, and that he would make up to 15 stops each day as part of his job.  AR 30 & 32.  In June of 2002, Plaintiff stopped working because he was "physically too sick to" perform his job. AR 33.

**A. Procedural History**

Plaintiff filed an application for Disability Benefits on April 21, 2003, alleging disability beginning June 13, 2002, due to chronic pain secondary to chronic kidney disease.  AR 83. Plaintiff's application for benefits was denied initially and upon reconsideration.  Id. 53-55 & 59-61.  Plaintiff then requested a hearing before an ALJ which occurred on January 18, 2005. Plaintiff, accompanied by his attorney Glen Carey, Esq., appeared and testified at the hearing. AR 14.  In a decision dated March 25, 2005, Judge Shellhamer, the ALJ presiding over the matter, determined that Plaintiff was not disabled under the Social Security Act.  Id. 21.

Thereafter, Plaintiff petitioned the Social Security Appeals Council ("Appeals Council") for a review of the ALJ's decision. AR 4-6.  Plaintiff's request for a review was denied by the Appeals Council on January 20, 2006.  Subsequently, on March 17, 2006, Plaintiff initiated the

current appeal in the United States District Court for the District of New Jersey seeking reversal of the Commissioner's decision and a determination that Plaintiff is entitled to disability benefits.

**B. Plaintiff's Testimony**

At the hearing before Judge Shellhamer, Plaintiff testified that he lives by himself in Spring Lake Heights, New Jersey. AR 28.  Plaintiff stated that he has been disabled since June 13, 2002, and has not worked at all since that time.  Further, Plaintiff explained that he had to stop working because he could no longer drive or function on a daily basis due to pain associated with chronic kidney stones.  AR 30-34 & 39.

Specifically, Plaintiff testified that he first had surgery to remove kidney stones in or around 1999 followed by a two-week stent placement. AR 34.  Since the surgery, Plaintiff contends that he has been in constant pain which has become more severe over time.  Indeed, in response to questions from the ALJ regarding his degree of pain, Plaintiff testified that on a scale of one to ten, his pain at the beginning of the week is a three; however, as the week progresses it escalates to a seven, eight and up to a ten. AR 35.   Plaintiff uses Percocet to treat the escalating pain. AR 36.  Plaintiff testified that he passes kidney stones six or seven times a year.  AR 41. In addition, Plaintiff explained that he has prostatitis "almost all the time" which impacts his ability to sit and lift. AR 47.  Further, Plaintiff testified that he saw a psychologist, Mary Rizzuto, for about a year, and that he was prescribed Xanax for depression, but that he does not like to use the medication because he does not like the way it makes him feel.  AR 49.

In addition to his testimony, on his disability application, Plaintiff stated that he could not perform his normal daily functions due to the pain and the medication. AR 83. On a typical day,

Plaintiff explained that he reads, watches TV, rests in bed or sleeps. AR 107. Plaintiff also stated that he is able to prepare his own meals, wash dishes, and take out small bags of garbage; however, Plaintiff noted that he is not able to clean or vacuum. AR 108. In addition, Plaintiff explained that his friends sometimes shop for him and often bring him to their house for dinner or visit with him at his home. Id. Plaintiff's daughter also visits him twice a week. AR 108.

**C. Medical Evidence**

The record reflects that Plaintiff returned to Coastal Urology Associates in November 2000, after a several year hiatus, with complaints of intermittent pain in his right flank. The treating physician noted that, at that time, Plaintiff claimed he had seen numerous doctors for his pain, but no one had been able to explain the cause of his pain and that most doctors told him to "just live with it." AR 128. Despite Plaintiff's complaints, the physician noted that everything was "benign except for a slightly enlarged prostate" and that Plaintiff did not have clinical prostatitis. AR 128-130.

Thereafter, in December 2000, Plaintiff met with Dr. Joseph Frascino for a renal consultation. At that time, Plaintiff reported that during the three years prior to the examination he experienced right renal colic and was diagnosed with having multiple kidney stones on the right side which required removal and insertion of a stent. Moreover, Plaintiff reported that the subsequent removal of the stent caused persistent pain in his right flank. A urinalysis, completed at that time, revealed only trace proteinuria, no hematuria and the sediment was negative. AR 155-56.

In February 2001, Plaintiff again met with Dr. Frascino who reported that he had been

treating Plaintiff for chronic chest and back pain.  Moreover, the physician noted that Plaintiff had a past and present history of kidney stones and a strong family history of kidney failure which interfered with his ability to carry out his daily affairs. AR 148.

On February 26, 2001, Dr. Kofsky wrote to Dr. Frascino regarding a transabdominal ultrasound he performed on Plaintiff's kidneys; Dr. Kofsky noted that the kidneys were normal in size and echogenicity; that no hydronephrosis is seen and that there was a small nonobstructing calculus in the right kidney and a tiny calculus in the left kidney, but no cysts or solid masses were noted.  AR 147.  Further, a repeat transabdominal ultrasound performed in March 2001 came back normal.  AR 145.

Subsequently, in August 2002, Plaintiff was evaluated at the Veterans Administration Health Care System in East Orange. AR 131-135.  At that time, it was noted that although Plaintiff complained of right/flank back pain, he reported feeling better following the use of a heating pad and naproxen. Id.

On March 17, 2003, Dr. Anthony DeLuca drafted a note "To Whom It May Concern" stating that Plaintiff suffered from chronic kidney disease second to chronic pylenephritis and nephrolithiasis and that in his opinion that Plaintiff was unable to work and is totally disabled. AR 199.  The Court notes, however, that no medical records or examination records dated on or around March 17, 2003 were attached to this note, nor are they contained in the medical record. Subsequently, on July 23, 2003, Dr. DeLuca compiled a report for the Division of Disability Determination Services based on a June 16, 2003, exam of the Plaintiff. AR 195-197.  Dr. DeLuca also reported that Plaintiff was normal except for CVA tenderness and that he suffered from chronic pylenephritis and nephrolithiasis.  However, Dr. DeLuca also reported that plaintiff

had limited ability to lift and carry, to sit, to push and pull, and to perform other tasks such as handling objects, hearing, speaking and traveling. In addition, Dr. DeLuca reported that Plaintiff was limited to less than two hours of walking or standing per day.

On July 11, 2003, Plaintiff presented to the emergency room complaining of a body rash and swollen hands that started after taking Avelox for chronic pancreatitis. AR. 136-144. Plaintiff was diagnosed with an allergic reaction, treated and released. Id. On July 25, 2003, Plaintiff presented to the emergency room with left flank pain radiating to the left groin. AR 159. Dr. Gary Linn diagnosed Plaintiff with left renal colic and a kidney stone. Plaintiff was treated "conservatively" with IV fluids and pain management and Dr. Linn noted that "his pain resolved substantially." Id. Thereafter, on July 27, 2003, Plaintiff was discharged.

On July 30, 2003, Dr. Linn saw Plaintiff for a follow up exam at which time Dr. Linn noted that Plaintiff's CT scan was normal, there were no stones and the urinalysis was negative. AR 173. A subsequent examination of Plaintiff's abdomen in August 2003 showed no obstruction or ureteral calculi and a CT scan of the abdomen was normal. AR 176.

Thereafter, on December 9, 2003, Plaintiff was seem by Dr. Thomas Armbruster at the request of the Social Security Administration. AR 183-191. Dr. Armbruster noted that Plaintiff complained of recurrent severe pain and that he had multiple admissions to the hospital for recurrent stones. Moreover, Dr. Armbruster noted that Plaintiff complained of depression secondary to the pain. Further, Dr. Armbruster noted that on physical exam, Plaintiff complained of pain, however, despite these complaints, Dr. Armbruster's physical exam of Plaintiff was "grossly normal". AR 186.

On December 8, 2003, Plaintiff was evaluated by Eleanor Siegel, Ph.D, the

Administration's consultative mental health examiner. AR 179-182. Dr. Siegel noted that Plaintiff reported being incapacitated and in chronic pain. AR 179 & 180. As a result of the exam, Dr. Siegel noted that Plaintiff had a great deal of anger and diagnosed him with an unspecified depressive disorder. AR 181.

On February 9, 2004, Ina Weitzman, Ph.D., performed a psychiatric review of the Plaintiff. AR 201-214  Dr. Weitzman reported that Plaintiff suffered from depression, but that it was not severe. Moreover, Dr. Weitzman reported that Plaintiff's depression only had a mild degree of limitation on his functional abilities. AR 211.

On February 9, 2004, Dr. Drice, a state agency physician, performed a residual functional capacity ("RFC") assessment of the Plaintiff. AR 215-222. Dr. Drice found that Plaintiff was able to stand or walk about 6 hours in an 8 hour workday; to sit for about 6 hours in an 8 hour workday and to have unlimited ability to push and pull. Moreover, Dr. Drice noted that Dr. DeLuca's proposed RFC was not supported by the total facts of the records. AR. 220-221.

Thereafter, on July 8, 2004, Plaintiff saw Dr. Linn alleging that he was suffering from back pain. Dr. Linn found that there was no evidence of obstruction or stones and released him. Thereafter, on September 9, 2004, Dr. DeLuca wrote another letter noting that although Plaintiff's condition has been relatively stable, he was still totally disabled and unable to work.

## II. Discussion

### A. Standard of review

On a review of a final decision of the Commissioner of the Social Security

Administration, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); see also Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001).  The Commissioner's decisions as to questions of fact are conclusive upon a reviewing court if supported by "substantial evidence in the record." 42 U.S.C. § 405(g); Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000).  While the court must scrutinize the entire record to determine whether the Commissioner's findings are supported by such evidence, Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978), the standard is "highly deferential." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004).  Indeed, "substantial evidence" is defined as "more than a mere scintilla," but less than a preponderance.  McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004).  "It means such relevant evidence as a reasonable mind might accept as adequate." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).  A reviewing court is not "empowered to weigh the evidence or substitute its conclusions for that of the factfinder." Williams v. Sullivan, 970 F.3d 1178, 1182 (3d Cir. 1992).  Accordingly, even if there is contrary evidence in the record that would justify the opposite conclusion, the Commissioner's decision will be upheld if it is supported by the evidence.  See Simmonds v. Heckler, 807 F.2d 54, 58 (3d Cir. 1986).

**B. Standard for entitlement of benefits**

Disability insurance benefits may not be paid under the Social Security Act unless Plaintiff first meets the statutory insured status requirements.  See 42 U.S.C. § 423(c).  Plaintiff

must also demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); see Plummer, 186 F.3d at 427.  An individual is not disabled unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423 (d)(2)(A).

The Social Security Act establishes a five-step sequential process for an ALJ's evaluation of whether a person is disabled.  See 20 C.F.R. § 404.1520.  First, the ALJ determines whether the claimant has shown that he is not currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a); see Bowen v. Yuckert, 482 U.S. 137, 146-47 n.5 (1987).  A claimant currently engaged in substantial gainful activity is automatically denied disability benefits.  See 20 C.F.R. § 404.1520(b); see also Bowen, 482 U.S. at 140.  Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520(c); see Bowen, 482 U.S. at 146-7 n.5.  Basic work activities relate to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b).  These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." Id.  A claimant who does not have a severe impairment is not disabled.  20 C.F.R. § 404.1520(c); see Plummer, 186 F.3d at 428.  Third, if the impairment is found to be severe, the ALJ determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R.

Pt. 404, Subpt. P., App. 1 (the "Impairment List").  20 C.F.R. § 404.1520(a)(4)(iii).  If the claimant demonstrates that his impairments are equal in severity to or meet those on the Impairment List, the claimant has satisfied his burden of proof and is automatically entitled to benefits.  See 20 C.F.R. § 404.1520(d); see also Bowen, 482 U.S. at 146-47 n.5.  If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he retains the residual functional capacity to perform his past relevant work.  20 C.F.R. § 404.1520(d); Bowen, 482 U.S. at 141.  If the claimant is able to perform his previous work, the claimant is determined not to be disabled.  20 C.F.R. §§ 404.1520(e), 416.920(e); Bowen, 482 U.S. at 141-42.  The claimant bears the burden of demonstrating an inability to return to the past relevant work.  Plummer, 186 F.3d at 428.  Finally, if it is determined that the claimant is no longer able to perform his previous work, the burden of production then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy."  Bowen, 482 U.S. at 146-47 n.5; Plummer, 186 F.3d at 428.  This step requires the ALJ to consider the claimant's residual functional capacity, age, education, and past work experience.  20 C.F.R. § 404.1520(f).  The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether the claimant is capable of performing work and not disabled.  Id.

C. **Decision and findings of the ALJ**

In the instant matter, ALJ Shellhamer found that Plaintiff retained the functional capacity to perform his past relevant work and that Plaintiff was not under a disability as defined in the Act at any period up to and including the date of his decision.  Specifically, the ALJ held that

10

although the record indicated that Plaintiff had some impairments resulting from kidney disease and depression, these impairments were not severe and did not prevent Plaintiff from performing a significant range of light work activity. Thus, the ALJ concluded that Plaintiff retained the RFC to perform his past relevant work as a salesperson.

The detailed findings are as follows:

1. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

2. The claimant's depression is not a "severe" impairment, as defined in the Social Security Act and Regulations.

3. The claimant's history of renal disease and history of prostate enlargement are severe impairments, based upon the requirements in the Regulations (20 CFR 404.1521).

4. Although the claimant does have medically determinable impairments, they do not meet or equal one of the listed impairments in the Commissioner's Listing of Impairments located in 20 C.F.R. Part 404, Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding his limitations are not entirely credible, when reviewed in the light of the record in its entirety, for the reasons set forth in the body of the decision.

6. The undersigned has carefully considered all of the medical opinions in the record, regarding the severity of the claimant's impairments, and has found that the preponderance of the reports from his treating and examining physicians provide persuasive evidence that the claimant is not disabled (20 CFR 404.1527).

7. The claimant has the residual functional capacity to do the following: The claimant can lift/carry weights of 10 pounds frequently and 20 pounds occasionally; stand/walk and sit for a total of 6 hours; and push/pull. He is able to frequently balance and occasionally climb, stoop, kneel, crouch and crawl.

8. The claimant indicated that in his job as a sales person, he was required to walk/stand for a total of 2 hours; sit for a total of 8 hours; and lift/carry weights of less than 10 pounds. He stated that he completed reports and similar tasks, but that he did not supervise others, did not use machines/tools, and did not require any technical knowledge or skills.

9. The claimant retains the residual capacity to perform light work activity. Accordingly,

he is able to return to his past relevant work as a salesperson, as he had previously performed his job.

10. The claimant has not been under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR 404.1520(f)).

On January 20, 2006, when Plaintiff's petition for review to the Appeals Council was denied, the ALJ's decision became the final decision of the Commission. AR 4-6.

D. **Plaintiff's claims on appeal**

On appeal, Plaintiff contends that the ALJ improperly evaluated the medical evidence and erred in not fully considering the Plaintiff's non-exertional impairments when making his decision. For these reasons, Plaintiff contends that the ALJ's decision is not supported by substantial evidence. For the reasons stated below, the Court finds these arguments without merit and affirms the ALJ's decision in full.

1. <u>The ALJ properly evaluated the medical evidence</u>

In the instant matter, Plaintiff contends that the Commissioner did not properly evaluate the medical evidence in the record. Specifically, Plaintiff argues that the ALJ did not give proper weight to his complaints about pain, his physical limitations or his mental impairments. In addition, Plaintiff argues that the ALJ's statement that Plaintiff did not meet or equal a Listed Impairment is conclusory. Defendant, on the other hand, argues that the ALJ's decision was supported by substantial evidence. The Court agrees.

To begin, Plaintiff argues that the ALJ improperly found that Plaintiff's allegations regarding his pain and limitations were not entirely credible in light of the entire medical record.

12

It is well-established that a claimant's subjective statements about his pain, without more, cannot be the basis for a finding of disability. 20 C.F.R. § 404.1529. Indeed, allegations of pain and other subjective symptoms must be supported by objective medical evidence. When a claimant complains of pain and establishes the existence of a medical impairment that could reasonably be expected to produce the pain, the ALJ must "determine the extent to which [the] claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it." Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir.1999). To make this determination, the ALJ may consider (1) daily activities; (2) the duration, frequency, location, and intensity of the pain or other symptoms; (3) precipitating and aggravating factors; (4) the "type, dosage, effectiveness, and side effects of any medication ... taken to alleviate [the] pain or other symptoms"; (5) "treatment, other than medication ... received for relief of [the] pain or other symptoms"; (6) any other measures used to relieve the pain or symptoms; and (7) "other factors concerning ... functional limitations and restrictions due to pain or other symptoms." 20 C.F.R. § 416.929(c)(3).

In the instant matter, ALJ Shellhamer specifically considered Plaintiff's subjective complaints of pain and functional limitations and found them not credible in light of the entire record. AR 18-20. Specifically, the ALJ explained that Plaintiff's "testimony as to his functional limitations during the time period at issue, was somewhat vague, and exaggerated considering the objective medical findings of record. In our opinion, this testimony was inconsistent with the much higher level of daily activities in the record." AR 18-19. In reaching this conclusion, the ALJ relied on Plaintiff's testimony as well as medical records and other documentation contained in the record. For example, Plaintiff indicated that he is able to prepare his own meals, wash dishes and take out small bags of garbage. AR 108. Moreover, Plaintiff indicated that he spends

13

time reading, watching TV and visiting with friends. Id. In addition, the record indicates that Plaintiff reported that his pain was improved with the use of a heating pad and pain medication such as naproxen and Percocet. AR 37, 134 &159. In addition, the ALJ considered the reports of Dr. Siegel and Dr. Weitzman, as well as Plaintiff's testimony that he was depressed, AR 15-16, and found that Plaintiff's depression was not a severe impairment, AR 20, and that there were no limitations based on Plaintiff's emotional problems. AR 16. In light of the objective medical findings in the record and Plaintiff's own testimony, the ALJ found that Plaintiff's functional limitations were not credible, and, instead, that Plaintiff retained the capacity to lift weights of up to 10 pounds frequently and 20 pounds occasionally; that Plaintiff could stand/walk and sit for a total of six hours and that Plaintiff can push/pull without limitation. For these reasons, the Court finds that there was substantial evidence in the record to support the ALJ's conclusion.

Next, Plaintiff argues that the ALJ's statement that Plaintiff did not meet or equal a Listed Impairment is conclusory and that the ALJ provided no rationale or discussion of the evidence to explain this conclusion. The Court does not agree. It is well-established that an ALJ's conclusion that a claimant's impairments do not meet or equal any Listed Impairment without "identifying the relevant listed impairments, discussing the evidence, or explaining [the] reasoning" constitutes error requiring a remand. Burnett v. Comm'r Soc. Sec. Admin., 220 F.3d 112, 119-20 (3d Cir.2000). In Burnett, the Third Circuit found an ALJ's conclusory statement that the claimant failed to meet any listing "hopelessly inadequate" and remanded the case for a full discussion of the evidence and explanation of the ALJ's reasoning. 220 F.3d at 119-20. However, in a later case, Jones v. Barnhart, 364 F.3d 501 (3d Cir.2004), the Third Circuit explained that the purpose of Burnett was to guarantee "sufficient development of the record and explanations of findings to

14

permit meaningful review" of step-three determinations. Jones, 364 F.3d at 505 (citing Burnett, 220 F.3d at 120).  Moreover, in Jones, the Third Circuit noted that an ALJ is not required "to use particular language or adhere to a particular format in conducting his analysis," but that the decision "read as a whole" must be capable of providing meaningful judicial review. 364 F.3d at 505. Thus, in Jones, the Third Circuit held that although the ALJ did not identify the most relevant listing, the ALJ had satisfied the standard set forth in Burnett by analyzing the medical evidence contained in the record and by explaining that analysis in an opinion. Id. at 502, 505.

In the instant matter, the Court is satisfied that the ALJ properly considered the medical evidence and concluded that Plaintiff did not have a Listed Impairment.  Indeed, the ALJ engaged in a thorough evaluation of all the medical evidence and set forth his findings and conclusions at length in the opinion.  As a result of this evaluation, the ALJ explained that Plaintiff's depression was not a severe impairment as defined in the Social Security Act, but that Plaintiff's renal disease and prostate enlargement were severe impairments.  Despite these findings, however, the ALJ plainly stated that "[a]lthough the claimant does have medically determinable impairments, they do not meet or equal one of the listed impairments in the Commissioner's Listing of Impairments located in 20 CFR Part 404, Appendix 1, Subpart P, Regulation No.4."  AR 20.  Thus, taken as a whole, the ALJ's opinion is capable of providing meaningful judicial review and the ALJ's opinion satisfies the requirements set forth in Burnett.  See, e.g., Cosby v. Commissioner of Social Sec., 2007 WL 1258527 (3d Cir. 2007).

Finally, Plaintiff contends that the ALJ did not properly evaluate the reports of Plaintiff's treating physicians. The Court does not agree. A cardinal principle guiding disability eligibility determinations is that an ALJ accord treating physicians' reports great weight, especially "when

15

their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Plummer, 186 F.3d at 429 (quoting Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir.1987)).  However, an ALJ may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided, and an ALJ may reject a treating physician's opinion outright on the basis of contradictory medical evidence. Newhouse v. Heckler, 753 F.2d 283, 286 (3d Cir.1985).

In the instant matter, a review of the ALJ's opinion demonstrates that the ALJ properly considered the opinions of Plaintiff's treating and examining physicians.  For example, the ALJ analyzed the opinion of Dr. DeLuca, one of Plaintiff's treating physicians, who, in March 2003, reported that Plaintiff suffered from chronic kidney disease and was unable to work. Subsequently, in June 2003, Dr. DeLuca reported that Plaintiff's evaluation was normal. At that time, however, Dr. DeLuca also inexplicably reported limitations on the Plaintiff's ability to lift, carry, sit, push, pull, handle hear, speak and travel; however, aside from these basic limitations, Dr. DeLuca did not indicate any specifics for these limitations or the underlying reasons. Thereafter, in September 2004, Dr. DeLuca reported that Plaintiff was unable to work.  In light of Dr. DeLuca's contradictory reports and the remaining evidence in the record, the ALJ noted that Dr. DeLuca's opinion was being accorded reduced weight because it was not supported by the preponderance of the evidence.

In addition, the ALJ considered the opinion of Dr. Frascino, another of Plaintiff's treating physicians.  Dr. Frascino reported that he had treated plaintiff on six occasions between December 2000 and July 2003 for intermittent flank pain that interfered with Plaintiff's ability to carry out his daily affairs and maintain a normal work schedule.  However, the ALJ pointed out that Dr.

Frascino's report explains that "the patient states that the pain has made it impossible for him to be gainfully employed." AR 18, 228-229.  Thus, the ALJ noted that Dr. Frascino's statement regarding Plaintiff's ability to work was based on Plaintiff's own statements to the physician and not, in fact, based on the physician's examination.

Moreover, the ALJ considered the opinions of Dr. Linn, Dr. Armbruster and Dr. Drice in reaching his conclusion.  In his report, Dr. Drice determined that the plaintiff's proposed RFC is not supported by the total facts of the record. AR 221.  Indeed, Dr. Drice noted that Plaintiff was treated conservatively for his complaint with hydration and pain management and, that following treatment, Plaintiff reported that his pain had substantially resolved.  AR. 220.  Moreover, Dr. Drice found that the severity of Plantiff's symptoms was inconsistent with the total evidence. Id.

In addition to looking at the report of Dr. Drice, the ALJ noted that Dr. Linn opted to treat Plaintiff conservatively on several occasions for his complaints of kidney stones, and, that in August 2003 there was no evidence of ureteral calculi and a CT scan of the abdomen was normal.  Similarly, Dr. Armbruster indicated that although Plaintiff alleged recurrent pain,on examinations his findings were "grossly normal."  For all these reasons, the Court finds that the ALJ properly considered and evaluated all the medical evidence including the reports of Plaintiff's treating physicians.

2. The ALJ properly considered Plaintiff's non-exertional impairments.

Finally, Plaintiff argues that the ALJ minimized Plaintiff's mental impairments, including, lack of concentration, irritability, anger, loss of energy, anxiety and insomnia, by dismissing them as not severe.  The Court does not agree.  As discussed above, the ALJ engaged in a thorough

discussion of all the medical evidence in the record including the reports of Eleanor Siegel, Ph.D, AR 179-182, and Ina Weitzman, AR 201-214.  Thus, the ALJ properly considered these reports in reaching his conclusion that although there was some evidence that Plaintiff suffers from depression, this impairment was not severe as defined in the Social Security Act.  Specifically, the ALJ considered Dr. Siegel's report finding that Plaintiff had a great deal of anger and that she diagnosed him as having a depressive disorder, not otherwise specified.  However, Dr. Siegel also reported that Plaintiff made eye contact, that his speech was goal directed and that he denied suicidal ideation or intent.  In addition, the ALJ considered the reports of Ina Weitzman Ph.D, as reviewed by Allen Hochberg, which found Plaintiff's depression to be not severe.  Indeed, Dr. Weitzman noted that any of Plaintiff's limitations appear "physical in nature" and that he was "not impacted by psyc [sic] issues."  AR 213.  Thus, the Court finds that there was substantial evidence to support ALJ Shellhamer's determination that Plaintiff's mental impairments were not severe.

### III. Conclusion

   For the reasons set forth above, the Court concludes that there is substantial evidence in the record to support the ALJ's determination that Plaintiff has the residual functional capacity to do his past relevant work. Therefore, the ALJ's decision is affirmed.

Date: May 15, 2007	/s/ Freda L. Wolfson	 
                 The Honorable Freda L. Wolfson  
                 United States District Judge